1  DONALD ROBERT KNIGHT, Pro Hac Vice
   Knight & Moses, LLC
2  7852 South Elati Street, Suite 201
   Littleton, Colorado
3  Telephone:   303/797-1645
   Facsimile:   303/730-0858
4  E-mail:      Don@knightandmoses.com

5  JOSEPH L. GREEN, Pro Hac Vice
   The Law Firm of Joseph Green
6  #1 McBride and Sons Center Drive, Suite 225A
   Chesterfield MO 63005
7  Telephone: 636/532-6600
   Facsimile: 636/532-6602
8  E-mail: joe@josephgreenlaw.com

9  DANIEL J. BRODERICK, SB #89424
   Federal Defender
10 TIVON SCHARDL, FL Bar #73016
   Trial & Habeas Counsel
11 801 I Street, 3rd Floor
   Sacramento, California 95814
12 Telephone:   916/498-6666
   Facsimile:   916/498-6656
13 E-mail:      Tim_Schardl@fd.org

14 Attorneys for Defendant
   JOSEPH CABRERA SABLAN
15

16                 IN THE UNITED STATES DISTRICT COURT

17                 FOR THE EASTERN DISTRICT OF CALIFORNIA

18

19 | UNITED STATES OF AMERICA,       )  No. 1:08-cr-00259-OWW
                                     )
20 |         Plaintiff,               )  **DEATH PENALTY CASE**
                                     )
21 |     v.                           )  ORDER REGARDING DISCOVERY
                                     )  MATTERS HEARD JUNE 8, 2011
22                                    )
   | JOSEPH CABRERA SABLAN,           )
23                                    )
   |         Defendant.               )
24 |_____    )

25      This order resolves two motions brought by Defendant Joseph Sablan.  In the first

26 motion (Doc. 333), Mr. Sablan seeks modification of the protective order (Doc. 120).  In

27 the second motion (Doc. 388), Mr. Sablan seeks two things:  (a) the production of

28 documents Mr. Sablan did not receive when his attorneys scanned so-called "583 case

1  files" at the United States Penitentiary at Atwater, *see* Orders filed Sept. 25 and Oct. 15,
2  2009 (Docs. 120 & 124); (b) documents related to the investigation of allegations made
3  against Dennis Smith in *Lucas, et al. v. Smith, et al.*, N.D. Cal. Case No. C96-2905-TEH.
4        The Government filed responses in opposition to each motion (Docs. 343 and
5  422), and Mr. Sablan filed replies thereto (Docs. 344, 377, and 423).  On June 8, 2011,
6  the Court heard oral argument during which the following resolutions were reached.
7        **A.**     **Modification of the Protective Order**
8        The protective order entered on September 25, 2009, is hereby modified to provide
9  the following:
10       1.     The protective order is intended to prevent Defendants from having
11 access to information that, if made available to inmates in the Bureau of Prisons or others,
12 could compromise institutional security or reveal personal identifying information of
13 BOP employees.  The protective order is limited to "the BOP's concerns related to
14 confidentiality and security" that were addressed during the hearing held September 8,
15 2009, Order (Doc. 120) at 2, which includes the following:
16           (a) information related to Security Threat Groups, Central Inmate
17           Monitoring, and other information revealing the assignment or movement of
18           inmates, and other inmate "separatee" information, *see* Tr. 9/8/09 Hr'g at 58-61,
19           and;
20           (b) information revealing personnel matters such as salaries, performance
21           evaluations and the like, *ibid.*, and;
22           (c) any personal identifying information such as home addresses, telephone
23           numbers, social security numbers, drivers license numbers, and the like.  *Ibid.*
24 These categories of information shall be referred to as "protected information."  No
25 protected information may be disclosed to a defendant except upon prior order made after
26 notice and an opportunity for objection and *in camera* inspection.
27       2.     When the Government believes documents responsive to a discovery
28 request contain protected information, the protective order provides a mechanism for the

1   Government to designate production as protected.  Order (Doc. 120) at ¶¶ 1-2.  The
2   protective order is hereby modified to provide the following mechanism for challenging
3   that designation:
4             (a) Defense counsel shall notify the Assistant United States Attorney
5        in writing that they wish to disclose designated documents, or portions thereof, to a
6        defendant.  Defense counsel shall identify by Bates numbers the documents or
7        portions thereof that they believe do not contain protected information.  Where a
8        document could be disclosed to a defendant if protected information is redacted,
9        defense counsel's notice to the Government shall identify through the use of Bates
10       numbers the specific information they intend to redact.
11            (b) The Government shall have fourteen (14) days in which to
12       respond to defense counsel's notice.  Where modification of the request would
13       resolve concerns about the disclosure of protected information, the Government
14       shall propose such modification in its response.
15            (c) If, following the discussions of counsel for the Government and
16       the defense, there is no objection to disclosure, defense counsel shall deliver
17       documents to Defendant on computer disks clearly labeled either "Copy of PTO . .
18       ." followed by the identifying information included in the Government's original
19       description of the disk's contents, or "Redacted PTO . . ." depending upon the
20       Government's response to defense counsel's notice.  These disks shall be mailed to
21       Defendant care of his counselor at FCI Dublin with a cover letter that clearly states
22       the enclosed material is covered by the protective order, and that lists the disks that
23       are enclosed.  Each transmission of disks to FCI Dublin must be accompanied by a
24       self-addressed envelope with postage prepaid to be used to return the disks to
25       counsel.
26            (d) If the parties are unable to reach agreement regarding a
27       document, they shall file a joint statement setting forth each party's position, and
28       file the document under seal for *in camera* inspection.

1   On June 8, 2011, at the conclusion of the hearing, defense counsel notified the
2   Government that they wish to send to Mr. Sablan, in whole or in part, the contents of
3   eleven disks of documents and 113 video disks.  The disks were described in the
4   declaration of Donald Knight filed in support of Mr. Sablan's supplemental reply (Doc.
5   377).

6   **B.    Motion to Compel**

7   1.    With regard to the files from USP Atwater, the Court makes the
8   following determinations:

9   (a)    The Government contends the contents of Inmate Case
10   Number ATW-I08-194 were produced in Bates range USA:000055-000480.  With
11   regard to that case, the motion is DENIED without prejudice to Mr. Sablan
12   presenting evidence that specific documents were not produced.

13   (b)    Regarding the case numbers that were listed as unused in the
14   Inmate Case Log, the Government represents that an attorney from the BOP
15   searched for documents related to those cases and found none.  Therefore, the
16   motion as to those case numbers is DENIED without prejudice to Mr. Sablan
17   presenting evidence that documents exist and were not produced.

18   (c)    The Government has identified six cases that were not
19   produced for scanning because they were part of an ongoing investigation.  Those
20   case numbers are ATW-I03-209, ATW-I07-141, ATW-I07-142, ATW-I07-423,
21   ATW-I07-547, and ATW-I08-165.  Mr. Sablan has withdrawan his request as to
22   ATW-I03-209 and ATW-I07-423.  With respect to the remaining four cases, Mr.
23   Sablan was ordered to identify those likely to have responsive information related
24   to assaultive behavior or intoxicants.  He has identified case numbers ATW-I07-
25   141 and 142 as involving an assault on staff, case number ATW-I07-547 as
26   potentially involving the taking of a hostage, and case number ATW-I08-165 as
27   involving an assault on staff with a homemade, metal weapon less than one month
28   prior to the events charged in the indictment.  The motion is GRANTED as to

those four cases.  The Government is directed to review those four files and either produce them or prepare a privilege log identifying matter the Government seeks to protect through redactions, and submit the documents for inspection *in camera*.

    (d)    The Government's response at 5:24 through 6:1 lists twenty-one cases for which it found responsive documents.  The Government contends it produced those documents to defense counsel after the June 8 hearing. The Government represents this production includes case number ATW-I07-185/186, which was combined with ATW-I07-197.  Defense counsel are reviewing those disks.  Assuming the Government produced the documents as represented, Mr. Sablan's motion to compel production of those files is DENIED without prejudice to showing a lack of compliance.

    2.    With regard to the documents related to *Lucas v. Smith*, Defendant Sablan has put forth three theories of materiality under Fed. R. Crim. P. 16(a)(1)(E)(i) and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  First, Mr. Sablan contends there is a reasonable probability a juror or jurors will not vote for a death sentence if they know that Dennis Smith was made warden of USP Atwater even though the Government possessed evidence that supported the allegations made against him in the *Lucas* case. Those allegations included that Smith, who was at the time relevant to *Lucas* the captain at the Federal Correctional Institution in Dublin, California, refused to remove Robin Lucas from the Special Housing Unit after she gave a sworn statement alleging that a correctional officer left her cell door unlocked so that a male inmate could sexually assault her.  The amended complain in *Lucas* also alleged Smith retaliated against Lucas and two other plaintiffs who made similar complaints by threatening to expose them as snitches unless they withdrew their allegations.  After Smith allegedly threatened Ms. Lucas, the amended complaint avers, she was beaten and raped in her SHU cell and the attack was apparently in retaliation for her complaints.

    Sablan's theory builds on the Board of Inquiry's finding that conditions at USP Atwater such as improper celling procedures and the easy availability

of alcohol and weapons contributed to Officer Rivera's death, and that these conditions also contributed to a guard being taken hostage in 2007.  Sablan asserts the combination of the *Lucas* evidence, the after-action report from the hostage-taking, and the Board's findings will persuade jurors that the Government, by allowing Smith to have responsibility for USP Atwater after his previous failings shares in responsibility for Officer Rivera's death, and that it would be unjust to execute Mr. Sablan while Warden Smith has suffered no adverse consequences.

Second, Mr. Sablan asserts that Warden Smith is likely to be called as a material witness in this case.  The defense intends to call Warden Smith for the purpose of describing the conditions at USP Atwater and to show that Smith and his staff failed to follow BOP policy and procedures for preventing the conditions that the Board found to have contributed to Officer Rivera's death.  In the event Warden Smith attempts to rely upon his record of experience with BOP to defend his discretionary actions, Mr. Sablan intends to use the evidence from the *Lucas* investigation to impeach Smith.

Third, Mr. Sablan asserts that evidence showing Mr. Smith retaliated against the *Lucas* plaintiffs will support an inference that Smith and others at USP Atwater destroyed or allowed the spoliation of evanescent evidence knowing it would be useful to the defense.  According to Mr. Sablan, evidence of his intoxication at the time of the homicide was has been lost by spoliation or destruction.

The purpose of setting forth these theories is to provide focus for the Government's review of potentially responsive documents.  According to Mr. Sablan, prior to the filing of the civil complaint in *Lucas*, the plaintiffs' attorneys and the United States Attorney's Office for the Northern District of California cooperated in an investigation of the plaintiffs' allegations.  The Government contends the Department of Justice has destroyed files produced during the investigation into the allegations from FCI Dublin.  Mr. Sablan counters that there was a firewall between the DOJ Civil Division attorneys who handled the civil case and the office in San Francisco that investigated the matter for potential criminal prosecution.  Mr. Sablan has requested that the Government

1  search for records from the U.S. Attorney's Office and produce records related to the
2  destruction of the DOJ Civil Division documents, including the relevant retention policy.
3  The Court finds that is appropriate, and that request is GRANTED.
4              The Government also asserts the BOP has files related to the events
5  at FCI Dublin.  The Government is directed to review those files in order to identify
6  documents that could support Mr. Sablan's theories, indicate where any redactions should
7  be made, and either produce the documents to the defense, or submit them for inspection
8  *in camera*.  To that extent, Mr. Sablan's motion is GRANTED.

10          IT IS SO ORDERED.

11  DATED:    July 5, 2011

13                              _/s/ OLIVER W. WANGER
                                Honorable Oliver W. Wanger
14                              UNITED STATES DISTRICT JUDGE