UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

\* \* \*

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 1:08-CR-00259-PMP |
| vs. | ) | |
| JOSE CABRERA SABLAN and JAMES NINETE LEON GUERRERO, | ) | **ORDER** regarding Defendant Sablan's Motion to Dismiss the Indictment on Grounds of Double Jeopardy and Duplication (Doc. #591) |
| Defendants. | ) | |

Before the Court for consideration is Defendant Jose Cabrera Sablan's ("Sablan") Motion to Dismiss the Indictment on Grounds of Double Jeopardy and Duplication (Doc. #591), filed May 15, 2013. On the same day, Defendant James Ninete Leon Guerrero ("Leon Guerrero") filed a Joinder in Sablan's Motion (Doc. #602). The Government filed an Opposition (Doc. #622) on June 17, 2013. Sablan filed a Reply (Doc. #640) on July 1, 2013. Leon Guerrero filed a Joinder in Sablan's Reply (Doc. #649) on July 2, 2013.

**I. BACKGROUND**

On August 14, 2008, a federal grand jury returned a three-count indictment against Defendants Sablan and Leon Guerrero, who are inmates at a federal correctional facility. (Indictment (Doc. #1).) The Indictment charges Defendants with first degree murder of Correctional Officer Jose V. Rivera. (Id.) Count One charges Defendants with violating 18 U.S.C. § 1111 ("federal murder"). (Id. at 1-2.) Count Two charges Defendants

with violating 18 U.S.C. § 1114 ("murder of a U.S. officer"). (Id. at 2.) Count Three charges Defendants with violating 18 U.S.C. § 1118 ("murder by federal inmate"). (Id.) The grand jury made ten additional Special Findings as to both Defendants. (Id. at 3-6).[1] Four of the Special Findings are at issue here. Special Finding 2 is offered to prove a mental state that would make Defendants eligible for the death penalty for premeditated federal murder. See 18 U.S.C. § 3591(a)(2)(A). Special Findings 6, 9, and 10 are aggravating factors for determining whether the death penalty should be imposed. See id. § 3592(c). On September 11, 2008, Defendants pled not guilty to all charges. (Mins. of Arraignment (Doc. #18).)

Defendants now move to dismiss, arguing the Indictment violates the Double Jeopardy Clause because it charges them three times for the same murder, and charges Count One separately even though it is a lesser included offense of Counts Two and Three. Defendants also argue the Special Findings, which detail the intent and aggravating factors for the death penalty, duplicate the charged offenses' elements and do not narrow the class of murderers eligible for a death sentence, in contravention of the Eighth Amendment. The Government responds that the Indictment does not violate double jeopardy protections and that duplication of offense elements in the Special Findings is permitted.

## II. DISCUSSION

### A. Double Jeopardy Claim

Count One of the Indictment charges Defendants with federal murder under § 1111 by "maliciously and with premeditation and malice aforethought, unlawfully kill[ing] . . . Jose V. Rivera" while the Defendants were "within the Special Maritime and Territorial Jurisdiction of the United States." (Indictment at 1-2.) Count Two charges

---

[1] The grand jury made an additional Special Finding of two or more prior convictions for Leon Guerrero. (Indictment at 5-6.) Hence, Special Findings 9 and 10 for Sablan match Special Findings 10 and 11 for Leon Guerrero. In this Order, the Court will refer to the Special Findings related to Sablan.

Defendants with murder of a U.S. officer under § 1114 because, at the time of the offense, Jose V. Rivera was a "United States Correctional Officer" who "was engaged in the performance of his official duties." (Id. at 2.) Count Three charges Defendants with murder by federal inmate under § 1118 because, at the time of the offense, Defendants were "persons confined in a Federal correctional institution . . . under sentences for a term of life imprisonment." (Id.)

Defendants move to strike Counts One and Three of the Indictment, arguing the Indictment violates the Double Jeopardy Clause because it charges a single offense in multiple counts. Defendants argue the offense of federal murder under § 1111 in Count One is a lesser included offense of murder of a U.S. officer under § 1114 and murder by federal inmate under § 1118 in Counts Two and Three.

The Government responds that although the Indictment has three counts for one murder, the relevant statutes are intended to separately proscribe the same offense.[2] The Government also argues federal murder under § 1111 is not a lesser included offense of either §§ 1114 or 1118 because it contains a jurisdictional element that the other sections lack, requiring that the murder occur "[w]ithin the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b).[3]

Defendants reply that the jurisdictional element of § 1111 is necessarily proved if the elements of either murder of a U.S. officer under § 1114 or murder by federal inmate

---

[2] The Government further contends that charging a single offense in multiple counts is not an issue because "'cumulative punishments' of either death or life imprisonment are not physically possible." (Gov't Resp. to Def. Mot. to Dismiss (Doc. #622) at 7.) This argument overlooks the Double Jeopardy Clause's purpose of "protect[ing] an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." Missouri v. Hunter, 459 U.S. 359, 365 (1983) (quoting Burks v. United States, 437 U.S. 1, 11 (1978) & Green v. United States, 355 U.S. 184, 187 (1957)).

[3] "Special Maritime and Territorial Jurisdiction of the United States" includes "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States . . . for the erection of a fort, magazine, arsenal, dockyard, or other needful building." 18 U.S.C. § 7(3).

3

under § 1118 are shown. In other words, if the Government proves that the victim was a United States officer in the performance of his official duties, then, by inference, the offense must have occurred within the special maritime and territorial jurisdiction of the United States. Defendants likewise argue that if the Government proves Defendants committed the offense while confined in a federal correctional institution, then the offense must have occurred within the special maritime and territorial jurisdiction. Also, Defendants appear to have withdrawn their argument that Count Three does not require proof of a fact that neither Count One nor Two requires, because Defendants' Reply addresses only Count One. In summary, the parties dispute whether Count One, which charges Defendants with federal murder under § 1111, requires proof of a fact distinct from the charges in Counts Two and Three.

The Double Jeopardy Clause "protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). "When a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other." United States v. Overton, 573 F.3d 679, 690 (9th Cir. 2009) (quotation ommitted). In these situations, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932); United States v. Davenport, 519 F.3d 940, 943 (9th Cir. 2008) (holding Blockburger also applies to determining whether one charge is a lesser included offense of another). In using this test, the Court focuses on the statutory elements, rather than what facts will be proved at trial. See Overton, 573 F.3d at 691. Ultimately, the inquiry is aimed at discerning whether Congress intended to punish two separate crimes. United States v. Hairston, 64 F.3d 491, 495 (9th Cir. 1995).

///

1  An offense's jurisdictional element "must be given substantive weight" in determining whether the charged offenses are different from each other. Id. at 496. For example, in Hairston, the Double Jeopardy Clause was not violated where the defendant was charged with robbery within the special maritime and territorial jurisdiction of the United States and taking United States property, because the jurisdictional element was a distinct fact requiring proof. Id. at 495-96 (referring to 18 U.S.C. §§ 2111 and 2114). This is because "[a]n ordinary crime may take on more significance if it occurs, for instance, in front of the White House, in a federal courtroom, in a national park, or on a military base; it injures not just the individual victim, but larger national interests." Id. at 496.

Neither the United States Supreme Court nor the United States Court of Appeals for the Ninth Circuit has addressed whether § 1111's requirement that the murder occur within the special maritime and territorial jurisdiction of the United States is a fact requiring proof that is distinct from the offenses of murder of a U.S. officer under § 1114 and murder by federal inmate under § 1118. At issue here are the first two subsections of § 1111, which state:

> (a) Murder is the unlawful killing of a human being with malice aforethought. Every . . . willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree.
> Any other murder is murder in the second degree.
> (b) Within the special maritime and territorial jurisdiction of the United States,
> Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life;
> Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.

Section 1114, which proscribes the murder of a United States officer or employee, refers to § 1111, but only as a source for identification of the proper punishment. Section 1114 states: "Whoever kills or attempts to kill any officer or employee of the United States . . . while such officer or employee is engaged in or on account of the performance of official

5

duties . . . shall be punished—(1) in the case of murder, as provided under section 1111." This language "is intended to incorporate the punishment prescribed in § 1111(b), not its jurisdictional provision; the language in § 1114 cannot reasonably be taken to incorporate that portion of § 1111(b) that does not deal with punishment." United States v. Peltier, 446 F.3d 911, 914 (8th Cir. 2006). Therefore, the jurisdictional element of § 1111 is a fact requiring proof that is distinct from the § 1114 charge in Count Two.

Section 1118, which punishes murder by a federal inmate serving a life sentence "by death or life imprisonment," refers to § 1111 only as a reference for defining murder. Specifically, § 1118(b) provides that "in this section . . . 'murder' means a first degree or second degree murder (as defined in section 1111)." The definition of murder is contained within § 1111(a). The jurisdictional element, which requires the murder be committed within the special maritime and territorial jurisdiction of the United States, is located within § 1111(b). Section 1118(b)'s reference to § 1111 for the definition of murder therefore does not incorporate § 1111(b)'s jurisdictional element. Further, § 1118 contains its own jurisdictional requirement by punishing murder by inmates confined in a federal correctional institution under a life sentence. In light of these considerations, § 1118 refers to § 1111(a) only to define murder and does not incorporate the jurisdictional element of § 1111(b).

Unlike the other two counts, Count One charging federal murder under § 1111 requires proof that the murder occurred within the special maritime and territorial jurisdiction of the United States. Thus, each charge is a distinct offense requiring proof of a fact that the others do not. The conclusion that § 1111's jurisdictional element is a significant and separate fact for the purposes of double jeopardy analysis under Blockburger is consistent with Ninth Circuit precedent in Hairston. Therefore, the Indictment charging three counts of murder does not violate the Double Jeopardy Clause by charging a single offense in multiple counts.

///

Nor is federal murder under § 1111 a lesser included offense of murder of a U.S. officer under § 1114 or murder by federal inmate under § 1118. Defendants argue proof of murder of a U.S. officer in the course of his duties necessarily will prove the jurisdictional element of § 1111. Defendants also argue proof of murder by a prisoner confined in a federal institution while serving a life sentence necessarily will prove the jurisdictional element, as the offense must have occurred within a federal correctional facility. Even if true, the statutory text of § 1111 requires proof of a fact not found in §§ 1114 or 1118. Where "each statutory provision requires proof of an additional fact the other does not . . . ," courts presume "that Congress intended to permit multiple punishments for a single act or transaction." Overton, 573 F.3d at 692. The fact that the evidence presented at trial will substantially overlap is of no consequence. Id. at 691. Additionally, § 1118 contains its own punishment clause and does not rely on § 1111 to determine the appropriate sentence. This further indicates that Congress intended to "punish two separate evils," not one. Hairston, 64 F.3d at 495. Section 1111 is not a lesser included offense of either § 1114 or § 1118.

Defendants rely on United States v. Agofsky, 458 F.3d 369 (5th Cir. 2006), which also analyzed whether the jurisdictional element of § 1111 is subsumed under § 1118. Id. at 371-72. The Agofsky Court followed Fifth Circuit precedent in United States v. Gibson, 820 F.2d 692 (5th Cir. 1987), which held that the "jurisdictional fact, while a prerequisite to prosecution under a particular statute, is not in itself an evil that Congress seeks to combat." Agofsky, 458 F.3d at 372 (quoting Gibson, 820 F.2d at 697). However, in Hairston, the Ninth Circuit rejected Gibson's holding, stating Gibson "ignores the fact that Congress may have strong interests in treating crimes occurring within the jurisdiction of the United States

7

differently from those occurring elsewhere." Hairston, 64 F.3d at 496.[4] The Court is bound by the Ninth Circuit's holding and, even if it were not, the Court agrees with Hairston's reasoning. Accordingly, the Indictment does not subject Defendants to double jeopardy.

### B. Aggravating Factors Claim

Defendants argue that the underlying statute for federal murder, § 1111, does not narrow the class of defendants eligible for the death penalty, which violates the Eighth Amendment. Defendants further argue that duplication of the charged offenses' elements in the Special Findings violates the Eighth Amendment. Defendants specifically contend Special Findings 2, 6, 9, and 10 are identical to the elements of the offenses charged in Counts One, Two, and Three. Special Finding 2 states Defendants "intentionally killed Jose V. Rivera" and is offered by the Government to prove that Defendants had the requisite mental state for the death penalty. (Indictment at 3.) Special Finding 9 states Defendants "committed the offense after substantial planning and premeditation to cause the death of Jose V. Rivera." Id. This aggravating factor mirrors Count One, which charges Defendants with violating § 1111, federal murder in the first degree. Special Finding 10 states Defendants "committed the offense against a Federal public servant who was an employee of a United States penal or correctional institution, Jose V. Rivera," while he was in the course of his duties. Id. This aggravating factor mirrors Count Two, which charges Defendants with violating § 1114, murder of a U.S. officer. Special Finding 6 states Defendants "caused the death of United States Correctional Officer Jose V. Rivera" while Defendants were federal inmates serving life terms. This aggravating factor mirrors Count Three, which charges Defendants with violating § 1118, murder by federal prisoner.

The Government responds that the duplication of offense elements as sentencing

---

[4] The Agofsky Court also expressed its "concern with the reasoning of Gibson" and cited the decision in Hairston, but ultimately concluded it "must follow Gibson until either this court sitting en banc or the Supreme Court says otherwise." Agofsky, 458 F.3d at 372 (quotation omitted).

factors in the Special Findings is permissible because narrowing the class of murderers to those eligible for the death penalty can occur at either the guilt or the sentencing phase. The Government contends that the Special Findings narrow the class of those eligible for the death penalty by allowing a jury to consider the circumstances of the offense. Defendants reply that Special Findings that are identical to the offense elements will confuse the jury and "imply that a death sentence is virtually automatic upon conviction." (Reply to Mot. to Dismiss (Doc. #640) at 7-10.)

The Federal Death Penalty Act of 1994 ("FDPA") provides the legal framework when the United States seeks capital punishment for a defendant found guilty of an offense potentially punishable by death. See Pub. L. 103-322, Title VI, §§ 60001-26, 108 Stat. 1959 (codified at 18 U.S.C. §§ 3591-98). To impose a death sentence, the FDPA requires the jury to unanimously find beyond a reasonable doubt: (1) the defendant was 18 years of age or older at the time of the offense; (2) the defendant had at least one of four enumerated mental states; and (3) the existence of at least one of sixteen statutorily defined aggravating factors. United States v. Mitchell, 502 F.3d 931, 973 (9th Cir. 2007) (citing 18 U.S.C. §§ 3591(a), 3592(c)). The jury must make special findings identifying any aggravating and mitigating factors unanimously found to exist. 18 U.S.C. § 3593(d).

To satisfy the Eighth Amendment, a capital sentencing scheme must "perform a narrowing function with respect to the class of persons eligible for the death penalty." Mitchell, 502 F.3d at 974 (quoting Jones v. United States, 527 U.S. 373, 381 (1999)). To perform the narrowing function, the factor making a defendant eligible for the death penalty cannot "apply to every defendant convicted of a murder." Tuilaepa v. California, 512 U.S. 967, 972 (1994). Rather, the "aggravating factor that renders a defendant subject to the death penalty must reasonably distinguish his conduct from that of the general run of murderers not to be sentenced to death." Bradway v. Cate, 588 F.3d 990, 991 (9th Cir. 2009).

An element of an underlying offense may be presented as an aggravating factor when the class of defendants eligible for the death penalty are narrowed at the guilt stage, as opposed to the penalty phase. Lowenfield v. Phelps, 484 U.S. 231, 246 (1988). Thus, "the aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)." Tuilaepa, 512 U.S. at 972 (citing Lowenfield, 484 U.S. at 244-46). The presentation of aggravating factors assists the jury in the penalty phase in its role of making "an individualized determination on the basis of the character of the individual and the circumstances of the crime" to decide which defendants eligible for the death penalty "will actually be sentenced to death." Zant v. Stephens, 462 U.S. 862, 878-79 (1983). The use of special findings that mirror offense elements therefore is permissible.

For example, in Harris v. Pulley, the defendant was charged with the murder of two people as well as multiple special findings for each murder. 692 F.2d 1189, 1203 (9th Cir. 1982), overruled on other grounds by Pulley v. Harris, 465 U.S. 37 (1984). The defendant challenged the duplicative special findings, arguing that an inflated number of charges for each murder likely led the jury to impose the death penalty. Id. The Court held "that the jury could not have been misled in this case by the duplicative charging of special circumstances," reasoning that it was clear throughout the trial that there were two murders arising out of one incident. Id.

Here, Defendants are being prosecuted under a statute that distinguishes them from all other murderers before the aggravating factors are considered. In Count One, Defendants are distinguished from all other murderers by being prosecuted under the clause in the federal murder statute, § 1111(a), for murder in the first degree, which authorizes the death penalty. There is no death penalty for those convicted of murder in the second degree. In Count Two, § 1114 distinguishes Defendants from all other murderers by requiring the murder victim to be a U.S. Officer in the course of his duties. In Count Three, § 1118 distinguishes Defendants from all other murderers by requiring Defendants to be federal

inmates serving life sentences.

Additionally, §§ 1111, 1114, and 1118 are subject to the procedural structure of the FDPA, which ensures that those eligible for the death penalty possess the requisite culpable mental states by requiring the jury to find that Defendants acted with one of the specified mental states. These mental states, often referred to as "gateway intent factors," require proof beyond a reasonable doubt that Defendants:

> (A) intentionally killed the victim;
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act . . . .

18 U.S.C. § 3591(a)(2); see, e.g., Mitchell, 502 F.3d at 973 (referring to the mental states as "gateway intent factors"). Special Finding 2 charges Defendants with "intentionally kill[ing] Jose V. Rivera," thus satisfying the gateway intent factor under subsection (A). These distinctions serve to narrow the class of individuals convicted of federal murder into a smaller group eligible for the death penalty, thereby satisfying the Eighth Amendment.

Moreover, the use of aggravating factors that mirror the offense elements does not violate the Eighth Amendment in the context of this case. The Indictment is clear that there is only one murder. In every one of the charges and special findings at issue, the Indictment identifies the victim by name. Further, each of the charges states both the specific date of the offense, as well as the specific location of the offense. There is no possibility a jury would interpret the multiple charges and special findings to mean that more than one murder is charged. The jury is entitled to consider the circumstances of the offense in making the

individualized determination of "whether a defendant eligible for the death penalty should in fact receive that sentence." Tuilaepa, 512 U.S. at 972. Thus, the fact that the aggravating factors mirror offense elements does not violate the Eighth Amendment.

United States v. McCullah does not alter this conclusion. 76 F.3d 1087 (10th Cir. 1996). In McCullah, the Tenth Circuit held that use of duplicative aggravating factors is unconstitutional because it skews the weighing process in death penalty considerations. Id. at 1111-12. However, McCullah invalidated only the use of identical aggravating factors, not aggravating factors that mirrored elements of the charged offenses.[5] This is because "the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process" for a jury determining whether to impose the death penalty. Id. at 1112; see also Allen v. Woodford, 395 F. 3d 979 (9th Cir. 2004). Conversely, for aggravating factors that mirror the elements of charged offenses, McCullah followed Lowenfield in finding that an aggravating factor that stated the defendant "committed the offenses charged in the indictment" did not violate the Constitution. McCullah, 76 F.3d at 1107-08. McCullah reasoned that the underlying statute "itself narrows the class of death-eligible defendants" and that an aggravating factor that mirrored the underlying offense elements "allowed the jury to consider" the facts surrounding the offense. Id. at 1108; see also United States v. Chanthadara, 230 F.3d 1237 (10th Cir. 2000).

The other cases Defendants point to similarly strike only factors that duplicate each other, not factors that duplicate the charged offenses, with the exception of United States v. Kaczynski, CR S-96-259-GEB-GGH, 1997 WL 34626785 (E.D. Cal. Nov. 7, 1997). However, Kaczynski is not controlling and is distinguishable, as Kaczynski found an aggravating factor that mirrored the underlying offense was improper because the court concluded the underlying offense, violation of 18 U.S.C. § 844(d), did not perform the

---

[5] Duplicative aggravating factors can arise when the Government presents non-statutory factors in addition to the statutory factors. See 18 U.S.C. § 3593(c).

narrowing function. Id. at *21-22. To the extent Kaczynski stands for the proposition that aggravating factors cannot mirror offense elements, it is contrary to Lowenfield and its application would result in an unusual sentencing scheme that would not allow a jury to consider the crime Defendants were convicted of in determining whether a death sentence is appropriate. Sections 1111, 1114, and 1118 narrow the class of murderers eligible for the death penalty, and the Special Findings are not duplicative aggravating factors. Therefore, the use of Special Findings 2, 6, 9, and 10, which mirror elements of the charged offenses, does not violate the Eighth Amendment.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Jose Cabrera Sablan's Motion to Dismiss the Indictment on Grounds of Double Jeopardy and Duplication (Doc. #591), as Joined by co-Defendant James Ninete Leon Guerrero (Doc. #602), is **DENIED**.

Dated: September 26, 2013.

PHILIP M. PRO
United States District Judge