UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA—FRESNO DIVISION

\* \* \*

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH CABRERA SABLAN and JAMES NINETE LEON GUERRERO,

    Defendants.

1:08-CR-00259-PMP

**ORDER** on Defendant Joseph Cabrera Sablan's Motion to Declare the Federal Death Penalty Act Unconstitutional (Doc. #703)

    Before the Court for consideration is Defendant Joseph Cabrera Sablan's Motion to Declare the Federal Death Penalty Act Unconstitutional (Doc. #703) filed September 9, 2013. The Government filed a Response (Doc. #728) on October 10, 2013. Defendant Sablan filed a Reply (Doc. #748) on November 12, 2013.

**I. BACKGROUND**

    The parties are familiar with the facts of the case and the Court will not repeat them here except where necessary. Defendant Sablan is charged with a three-count indictment for the murder of Correctional Officer Jose V. Rivera. In addition to the three counts, the Indictment (Doc. #1) contains eleven Special Findings as to Defendant Leon Guerrero. (Id.) The Special Findings serve to meet the mental state and aggravating factors required by the Federal Death Penalty Act ("FDPA"). The Government filed an amended notice of intent to seek the death penalty (Doc. #589) on May 14, 2013.

    Defendant Sablan moves the Court to declare the FDPA unconstitutional under the Fifth and Eighth Amendments and bar application of the death penalty in this case. He argues the FDPA is applied in an arbitrary and capricious manner and that it fails to satisfy the narrowing function

required by the Eighth Amendment. He further argues the federal death penalty is unconstitutional because there is no principled basis for distinguishing cases in which the death penalty has been imposed from cases in which the death penalty is not imposed.

The Government responds the FDPA is constitutional and contends the statistics proffered by Defendant Sablan do not stand for the proposition that the death penalty is applied arbitrarily and capriciously, in general and in this case. The Government further contends Defendant Sablan fails to identify the nuances of each case and that the process for determining whether the death penalty should be imposed is discretionary. The Government argues Defendant Sablan failed to show decision makers in this case acted with purposeful discrimination on the basis of race, region, or gender.

Defendant Sablan replies that the FDPA operates in a manner that conflicts with the Constitution and that the "vast difference between the number of cases that are legally death-eligible on their facts" and the cases in which the death penalty is sought, "suggests arbitrariness." (Def.'s Reply (Doc. #748) at 5.) He further argues it is appropriate to consider the Attorney General's process for authorizing prosecutors to seek the death penalty. Defendant Sablan requests an evidentiary hearing.

**II. DISCUSSION**

    **A. Arbitrary and Capricious Operation**

Defendant Sablan moves the Court to declare the federal death penalty unconstitutional or bar its application in this case on the grounds that it operates arbitrarily and capriciously in violation of the Fifth and Eighth Amendments under Furman v. Georgia, 408 U.S. 238 (1972). Defendant Sablan avers the federal death penalty is currently applied as arbitrarily as the statute struck down in Furman and argues the FDPA fails to satisfy the Eighth Amendment's narrowing requirement and that the Government pursues the death penalty infrequently and thus arbitrarily. In support of his arguments, Defendant Sablan submits data from the Department of Justice and the Federal Death Penalty Resource Counsel covering all federal homicide cases between 1995 and 2006. According to the Defendant's data and calculations, the Government reviewed forty-seven percent of those cases to determine whether they were death eligible. Of those cases reviewed,

fifteen percent were selected for capital prosecution and the jury returned a death sentence in fourteen percent of cases in which it was sought.

Defendant Sablan also argues the federal death penalty is applied in a racially biased manner and submits the Declarations of Kevin McNally, Director of the Federal Death Penalty Resource Counsel Project ("McNally Declaration") and Dr. Lauren Cohen Bell, Associate Professor of Political Science and Associate Dean at Randolph-Macon College ("Bell Declaration"). The McNally Declaration presents data collected on the federal death penalty since 1988, including the frequency with which the death penalty has been sought and imposed, the race of defendants for whom capital prosecution has been authorized, the frequency of capital prosecution on a regional basis, and the race and gender of victims. According to the McNally Declaration, 465 cases out of 2,886 defendants eligible for the death penalty, or sixteen percent, were selected for capital prosecution under the FDPA. Of those cases selected, sixty-eight defendants have received death sentences and three defendants have been executed. The McNally Declaration also provides data as to the race and gender of victims, namely that a higher death sentencing rate exists when the victim is a white female, an assertion also supported by the Bell Declaration. Finally, the McNally Declaration provides data on the race of defendants and the number of capital prosecutions in each state, plus the District of Columbia, since 1988.

In Furman, the Supreme Court struck down the death penalty laws at issue in that case as cruel and unusual punishment because of their inequitable and discriminatory application. Id. at 240. "The high service rendered by the 'cruel and unusual' punishment clause of the Eighth Amendment is to require legislatures to write penal laws that are evenhanded, nonselective, and nonarbitrary, and to require judges to see to it that general laws are not applied sparsely, selectively, and spottily to unpopular groups". Id. at 256 (Douglas, J., concurring). Furman demands the death penalty cannot be imposed under sentencing procedures that create a substantial risk that it would be inflicted in an arbitrary and capricious manner. Gregg v. Georgia, 428 U.S. 153, 188 (1976). A death penalty statute must rationally narrow the class of death-eligible defendants and permit a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of the defendant's crime. Kansas v. Marsh, 548

1  U.S. 163, 173–74 (2006); see also McCleskey v. Kemp, 481 U.S. 279, 302–04 (1987); Zant v.
2  Stephens, 462 U.S. 862, 877–79 (1983); Gregg, 428 U.S. at 189.

3        Defendant Sablan's argument on arbitrary and capricious application of the federal death
4  penalty has been rejected previously by several courts.  See, e .g., United States v. Sampson, 275
5  F.Supp.2d 49 (D.Mass. 2003); United States v. O'Driscoll, 203 F.Supp.2d 334 (M.D.Pa.2002);
6  United States v. Hammer, 25 F.Supp.2d 518 (M.D.Pa. 1998).  The prosecutor has discretion to
7  prosecute and seek the death penalty. See McClesky, 481 U.S. at 296-97;  O'Driscoll, 203
8  F.Supp.2d at 341.  That "discretion must be suitably directed and limited so as to minimize the risk
9  of wholly arbitrary and capricious action."  Gregg, 428 U.S. at 189.  However, that the death
10 penalty is infrequently sought or imposed does not, by itself, render the FDPA unconstitutional.
11 Sampson, 275 F.Supp.2d at 88; O'Driscoll, 203 F.Supp.2d 334. Constitutional questions arise only
12 when the risk of arbitrariness becomes "sufficiently substantial." Furman, 408 U.S. at 295.  The
13 FDPA performs the requisite narrowing function and requires a jury to consider the individual
14 circumstances of a case through the weighing of aggravating a mitigating factors.  The infrequent
15 seeking of the death penalty does not render it unconstitutional.

16       Finally, Defendant Sablan does not articulate any arguments that the death penalty is being
17 applied to him on the basis of his race, the race and gender of the victim, or the region in which he
18 is being prosecuted, but he nevertheless offers evidence for such a claim.  However, the capital
19 prosecution rates provided based on race do not include the rates on Chamorros, Defendant
20 Sablan's ethnic group, or on Pacific Islanders more broadly.  Furthermore, the McNally
21 Declaration's findings as to increased likelihood of capital prosecution for white female victims, as
22 supported by the Bell Declaration, do not apply in this case, where the victim was a Hispanic male.
23 Finally, the regional analysis in the McNally Declaration focuses on the states of New York,
24 Vermont, and Connecticut and makes no argument as to capital prosecution in California.
25 Accordingly, Defendant Sablan's arguments as to racial, victim-based, or regional discrimination, if
26 any, fail because he did not demonstrate "the existence of purposeful discrimination" that had a
27 "discriminatory effect" on him. See McCleskey, 481 U.S. 279 at 292-93 (defendant must prove that
28 the decision makers in his case acted with discriminatory purpose); United States v. Bin Laden, 126

F.Supp.2d 256, 260–61 (S.D.N.Y.2000) (under McCleskey, systemic statistics alone cannot establish discriminatory intent in a particular prosecution).

### B. Distinguishing Capital Prosecutions from Other Death-Eligible Cases

Defendant Sablan also argues the federal death penalty is unconstitutional under the Eighth Amendment because there "is an absence of a principled basis for distinguishing between cases where the federal death penalty is imposed from cases where it is not imposed." (Def.'s Mot. to Declare FDPA Unconstitutional (Doc. #703) at 15.)  In support, Defendant Sablan provides the Court with approximately thirty case summaries, each only a sentence or two long, which describe the nature of the charges and the ultimate disposition.

This argument is foreclosed by the Supreme Court's decision in McCleskey, in which it held there are many variables in a criminal prosecution that impact the ultimate outcome:

> The Constitution is not offended by inconsistency in results based on the objective circumstances of the crime.  Numerous legitimate factors may influence the outcome of atrial and a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt.  If sufficient evidence to link a suspect to the crime cannot be found, he will not be charged.  The capability of the responsible law enforcement agency can vary widely.  Also, the strength of the available evidence remains variable throughout the criminal justice process and may influence a prosecutor's decision to offer a plea bargain or to go to trial.  Witness availability, credibility, and memory also influence the results of prosecutions.  Finally, sentencing in state courts is generally discretionary, so a defendant's ultimate sentence necessarily will vary according to the judgment of the sentencing authority.  The foregoing factors necessarily exist in varying degrees throughout our criminal justice system.

481 U.S. at 307, n.28.  The Court therefore rejects Defendant Sablan's argument and denies his request to hold an evidentiary hearing on the matter. McCleskey is still the law of the land and the Court cannot ignore its precedent.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Joseph Cabrera Sablan's Motion to Declare the Federal Death Penalty Act Unconstitutional (Doc. #703) is **DENIED**.

Dated: January 15, 2014

_____
HONORABLE PHILIP M. PRO
U.S. DISTRICT COURT JUDGE