1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT

8        FOR THE EASTERN DISTRICT OF CALIFORNIA—FRESNO DIVISION

9                                    * * *

10   UNITED STATES OF AMERICA,          )
                                        )
11                      Plaintiff,      )        1:08-CR-00259-PMP
                                        )
12                                      )
                                        )
13   v.                                 )
                                        )
14                                      )        **ORDER**
     JOSEPH CABRERA SABLAN and          )
15   JAMES NINETE LEON GUERRERO,        )
                                        )
16                      Defendants.     )
                                        )
17   _____)

18        Presently before the Court for consideration is Defendant Joseph Cabrera Sablan's

19   Combined Motion to Dismiss Indictment (Doc. #722), filed under seal on October 3, 2013.

20   The Government filed its Opposition (Doc. #727) on October 10, 2013.  Defendant Sablan

21   filed a Reply (Doc. #749) on November 12, 2013.

22        Also before the Court are two motions filed by Defendant James Ninete Leon

23   Guerrero that have been incorporated by Defendant Sablan: (1) Motion to Dismiss Counts

24   One and Two of the Indictment[1] (Doc. #689); and (2) Motion for Order Precluding the

25   Death Penalty (Doc. #689).  Both of these motions were filed on August 16, 2013.

26   Defendant Sablan Joined (Doc. #700, #701) on September 9, 2013.  The Government filed

27   _____

28        [1] Defendant Sablan incorporates only section III of Defendant Leon Guerrero's Motion.

1    an omnibus Opposition (Doc. #706) on September 16, 2013.  Defendant Leon Guerrero

2    filed a Reply (Doc. #737) on October 22, 2013.[2]

3    **I. BACKGROUND**

4         The parties are familiar with the facts of the case and the Court will not repeat them

5    here except where necessary.  Defendant Sablan is charged with a three-count Indictment

6    for the first-degree murder of Correctional Officer Jose V. Rivera at United States

7    Penitentiary ("USP") Atwater on June 20, 2008.  (Indictment (Doc. #1).)  Count One

8    charges Defendant Sablan with violating 18 U.S.C. § 1111 ("federal murder").  (Id. at 1-2.)

9    Count Two charges Defendant Sablan with violating 18 U.S.C. § 1114 ("murder of a U.S.

10   officer").  (Id. at 2.)  Count Three charges Defendant Sablan with violating 18 U.S.C.

11   § 1118 ("murder by federal inmate").  (Id.)  In addition to the three counts, the Indictment

12   lists ten Special Findings, which serve to meet the mental state and aggravating factors

13   required by the Federal Death Penalty Act ("FDPA").  (Id.)  The death penalty is a potential

14   punishment for first-degree murder under Counts One and Two, and for first- or

15   second-degree murder under Count Three.  The Government has filed an amended notice of

16   intent to seek the death penalty (Doc. #589).

17        Defendant Sablan now moves the Court for relief on two grounds, seeking either

18   dismissal of the Indictment or an order barring the death penalty.  First, Defendant Sablan

19   argues the warden and other prison officials at USP Atwater failed to comply with prison

20   policies and their deliberate indifference toward prison conditions led to a dangerous

21   environment in which both inmates and guards were at a substantial risk of harm.

22   Defendant Sablan further argues the prison officials disregarded their duty to create and

23   maintain a safe environment and instead allowed for the widespread availability of alcohol

24   and weapons at USP Atwater, which, as a result, made it necessary for inmates to carry

25   weapons for personal protection.  Defendant Sablan argues the Due Process Clause requires

26   _____

27   [2]  Defendant Leon Guerrero subsequently pled guilty and has been sentenced (Doc. #838,
     #844).  As a result, all pre-trial motions filed by Defendant Leon Guerrero are moot as to him.  This

28   Order discusses Defendant Leon Guerrero's motions only to as they pertain to Defendant Sablan and
     were joined by Defendant Sablan.

1   dismissal or a bar against the death penalty because of the Government's involvement in the

2   conditions at USP Atwater that contributed to an unsafe environment.

3        Similarly, Defendant Sablan argues the Court should use its inherent supervisory

4   powers to dismiss the Indictment or bar the death penalty because of the prison officials'

5   involvement in creating an unsafe environment, as well as their failure to take corrective

6   measures toward known problems with alcohol and weapons at USP Atwater.  Defendant

7   Sablan moves for dismissal or a bar against the death penalty to "ensure that the

8   government does not place its sins on the head of Mr. Sablan and ask this Court to hold him

9   to account through his death, while ignoring the wrongful conduct of the government of its

10  role in contributing to Jose Rivera's death, for which it will never otherwise be held

11  accountable."  (Mot. to Dismiss (Doc. #722) at 3.)

12       Defendant Sablan's second ground for relief is the failure of the officials

13  investigating the attack on Officer Rivera to collect evidence of Defendant Sablan's blood

14  alcohol level.  Defendant Sablan argues the USP Atwater and other government personnel

15  who responded to the attack knew Defendant Sablan was intoxicated at the time of the

16  attack, yet they did not follow Bureau of Prisons or FBI protocols that require the collection

17  of evidence of intoxication.  Defendant Sablan argues this failure deprives him of a defense

18  to his first-degree murder charges and mitigating evidence for the sentencing phase of

19  FDPA proceedings.  Defendant Sablan also incorporates Section III of Defendant Leon

20  Guerrero's Motion to Dismiss Counts One and Two of the Indictment (Doc. #688) and

21  Motion to Preclude the Death Penalty (Doc. #689), which argue the prison officials acted in

22  bad faith when they did not collect evidence of Defendants' intoxication levels following

23  the attack, thereby depriving Defendants of exculpatory and mitigating evidence for which

24  there is no comparable evidence.

25       Defendant Sablan also moves for an evidentiary hearing to present his proffered

26  evidence of the unsafe conditions at USP Atwater and to demonstrate the deliberate

27  indifference of the prison officials and the bad faith failure to collect Defendant Sablan's

28  blood alcohol level after the attack.  Defendant Sablan attaches to his Motion forty-four

exhibits, which include charts, witness declarations, photographs, video, and other documents pertaining to the prevalence of assaults, weapons, and alcohol at USP Atwater, as well as the decreased use of segregation as a form of punishment.

The Government responds that the actions or decisions of the warden and other USP Atwater officials did not induce Defendant Sablan to attack Officer Rivera.  The Government further argues the unsafe conditions at USP Atwater, as seen in the prevalence of weapons and alcohol, were not the result of government conduct, but inmate conduct, and that this environment is not directly connected to Defendant Sablan's decision to attack Officer Rivera.  The Government further argues that prison officials had no duty to collect Defendant Sablan's intoxication level, and that their decision to not do so was not made in bad faith.  The Government contends that comparable evidence exists in the video of the attack, witness testimony, and a Bureau of Prisons incident report finding that Defendants were obviously intoxicated.

## II. DISCUSSION

### A. Deliberate Indifference Toward Alcohol and Weapons at USP Atwater

Defendant Sablan argues the government's deliberate indifference toward contraband in the form of alcohol and weapons at USP Atwater constitutes outrageous misconduct.  He further argues that this misconduct was *malum in se* because the prison officials had a duty to maintain a safe environment inside the prison.  Defendant Sablan argues he was not predisposed to attack Officer Rivera and did not intend to kill Officer Rivera.  He argues the Due Process Clause thus bars prosecution or the death penalty. Alternatively, Defendant Sablan argues the Court should use its supervisory powers to dismiss prosecution or the death penalty because of the government's involvement in the conditions at USP Atwater.

In support of his Motion, Defendant Sablan proffers evidence indicating a rise in contraband alcohol and weapons, as well as an increase in violence, among the inmates at USP Atwater in the two and a half years prior to Defendant Sablan's attack on Officer Rivera.  Defendant Sablan also contends the sanctions imposed by prison officials for

alcohol and drug violations decreased during the same time period.  He further contends the United States Attorney received more than triple the referrals for prosecution from USP Atwater as in previous years, but declined nearly two-thirds of those prosecutions. Defendant Sablan also argues several assaults by inmates on prison officials, including a hostage situation, occurred in the year prior to the present murder and provided the prison notice of the prevalence of homemade weapons among inmates in USP Atwater.  Defendant Sablan concedes his role in the attack, but contends that it was only a "spontaneous, drunken attack" made possible by the freely available alcohol, widespread homemade weapons, and placement of Defendant Leon Guerrero in the prison unit with Defendant Sablan.

The Government responds that Defendant Sablan's proffered evidentiary materials "to show that the warden may have poorly managed USP Atwater prior to the homicide are interesting, but so what?"  (Resp. Mot. to Dismiss at 5.)  The Government further responds that neither the warden nor the presence of weapons and alcohol killed Officer Rivera—Defendants Sablan and Leon Guerrero did.  The Government contends that even if Defendant Sablan had a weapon because he thought he needed protection from other inmates, that reason does not justify the use of his weapon on Officer Rivera, a guard who was alone, unarmed, and conducting an inmate count at the time of the attack.  Finally, the Government argues the contraband alcohol and weapons at USP Atwater were created by the inmates, not the prison officials, and the conditions in the prison did not constitute outrageous government conduct in violation of due process.

The Court "may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation." United States v. Chapman, 524 F.3d 1073, 1084 (9th Cir. 2008) (quotation omitted).  The remedy of dismissal, "however, is limited to extreme cases." United States v. Black, 733 F.3d 294, 302 (9th Cir. 2013) (quotation omitted).  Due process is violated "only when the government's conduct is so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Ramirez, 710 F.2d 535, 539 (9th Cir. 1983) (quoting United States v. Ryan, 548

F.2d 782, 789 (9th Cir. 1976), cert. denied, 430 U.S. 965 (1977)).  "This has been described as 'an extremely high standard.'"  United States v. Garza-Juarez, 992 F.2d 896, 904 (9th Cir. 1993) (quoting United States v. Smith, 924 F.2d 889, 897 (9th Cir. 1991)).

"[O]utrageous conduct may also be found when the government operate[s], for an extended period of time, an actual and illegal apparatus."  Id. (quotation omitted).  The Court may dismiss the indictment "where involvement by undercover police officers or informers in contraband offenses is so extensive that due process prevents the conviction of even a predisposed defendant."  United States v. Citro, 842 F.2d 1149, 1152–53 (9th Cir. 1988).

Where government conduct does not constitute a due process violation, the Court "may nonetheless dismiss under its supervisory powers."  Chapman, 524 F.3d at 1084.  "A district court may exercise its supervisory power to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct."  Id. at 1085 (quotation omitted).  However, a court cannot sanction the government unless the government has broken the law.  United States v. Sampson, 927 F.2d 1088, 1090 (9th Cir. 1991).  Also, the supervisory power provides "authority for the courts to supervise their own affairs, not the affairs of the other branches."  Id. at 1091.  "Judicial integrity is rarely threatened significantly when executive action does not violate the Constitution, a federal statute, or a procedural rule."  United States v. Gatto, 763 F.2d 1040, 1046 (9th Cir. 1985).

"Dismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice."  United States v. Kearns, 5 F.3d 1251, 1253 (9th Cir. 1993).  Dismissal "may be permitted only in cases of flagrant prosecutorial misconduct" because dismissal with prejudice "encroaches on the prosecutor's charging authority."  Chapman, 524 F.3d at 1085 (quotations omitted).  Dismissal is not warranted where the government's conduct "may have been negligent, or even grossly negligent."  Kearns, 5 F.3d at 1255.

Here, the evidence submitted by Defendant Sablan indicates that USP Atwater had an increased amount of illegal alcohol and weapons in the years prior to the attack on Officer Rivera.  The evidence also shows that some inmates and personnel felt concerned for their safety, and that the rise in dissatisfaction with the prison conditions coincided with the arrival of a new warden in January 2006.  The evidence further shows a shift in disciplinary actions at USP Atwater, including less solitary confinement for those who violated prison rules.

However, Defendant Sablan's arguments do not meet the extremely high standard of outrageous government misconduct.  Despite his assertions that he accepts responsibility for his role in the attack, Defendant Sablan points to the alcohol, weapons, and Defendant Leon Guerrero as the reasons for the murder, contending he had no predisposition to attack Officer Rivera.  However, Defendant Sablan has neither argued nor demonstrated that the warden, or any other prison official, encouraged Defendant Sablan to attack Officer Rivera.  Furthermore, no prison official manufactured either the contraband alcohol consumed by Defendant Sablan, or the weapon used in the attack on Officer Rivera.  Defendant Leon Guerrero's role in the attack is undisputed, but video footage displays Defendant Sablan initiating the attack.  Also, Defendant Sablan has a history of violence within prisons, including a prior attack on a correctional officer in 1992 at USP Lompoc.

The Court finds Defendant Sablan has not shown the prison officials to have been so extensively involved in the manufacture and distribution of alcohol and weapons at USP Atwater that prosecution of this case would violate due process.  Defendant Sablan's proffered evidence indicates that USP Atwater had a rise in contraband alcohol and weapons, and a decrease in prosecutions, but the evidence does not indicate discipline at USP Atwater ceased altogether.  The video footage of the attack demonstrates otherwise: at the moment Defendant Sablan attacked Officer Rivera, all inmates were locked into their cells during a scheduled count.  Had Defendant Sablan complied with the lockdown procedure, the attack could not have occurred.

Additionally, the Court declines to exercise its supervisory powers to dismiss the

1   Indictment or bar the death penalty on the basis of deliberate indifference by prison officials

2   to dangerous conditions at USP Atwater.  The prison may have been poorly managed, but

3   the Court's supervisory powers are intended for the courts to supervise their own affairs,

4   and the Court finds no evidence of prosecutorial misconduct warranting dismissal.

5   Sampson, 927 F.2d at 1091.  A review of the decisions made by Bureau of Prisons officials

6   is better served by an administrative investigation or a separate litigation, not by impeding

7   or ending this prosecution.

8          This is not to say Defendant Sablan's contentions that USP Atwater was poorly

9   managed by deliberately indifferent officials are unsubstantial.  Furthermore, the

10  Government's response of "so what?" to Defendant Sablan's contentions does not

11  acknowledge the gravity of the situation.  However, a pretrial evidentiary hearing is not

12  warranted.  At trial, the jury may consider to what extent the prison's conditions contributed

13  to Defendant Sablan's attack on Officer Rivera.  See Simpson, 927 F.2d at 1091 n.4. ("That

14  the government's conduct is not a proper basis for dismissing the indictment does not, of

15  course, make it irrelevant to the jury's decision . . . .").

16          **B.  Failure to Collect Blood-Alcohol Levels After the Attack**

17          Defendant Sablan seeks dismissal of all three counts of the Indictment and an order

18  barring the death penalty on the basis of the government's failure to collect his

19  blood-alcohol level following the attack on Officer Rivera.  Defendant Sablan argues the

20  officers responding to the attack knew Defendant Sablan was intoxicated and that prison

21  and law enforcement policies require prison officials to administer tests for alcohol levels

22  following an assault.  Defendant Sablan also argues that those same policies require Bureau

23  of Prisons investigators to investigate the source of the alcohol, collect evidence of its

24  production and consumption, collect and test blood samples, and preserve the evidence.

25  Defendant Sablan further argues that Bureau of Prisons officials initially found the

26  investigating officials consciously chose not to test for Defendant Sablan's blood alcohol

27  level, but later removed that finding from the final report.  Defendant Sablan argues this

28  omission from the report indicates an unwillingness by the officials to own up to their

8

1    failure to collect the necessary alcohol-related evidence following the attack. Defendant

2    Sablan further argues he now has no comparable means of presenting a defense of voluntary

3    intoxication or mitigation evidence. Defendant Sablan seeks an evidentiary hearing to

4    demonstrate the investigating agents acted in bad faith in deciding to not collect his

5    blood-alcohol level or any other evidence of his intoxication.

6         The Government responds that the officers responding to the attack did not have a

7    constitutional duty to perform any blood-alcohol tests and therefore did not violate due

8    process by failing to obtain the blood-alcohol level of Defendant Sablan. The Government

9    further contends that the context of the attack constituted a chaotic and traumatic situation,

10   and that the apparent nature of Defendant Sablan's intoxication was not immediately clear

11   to the responding officers. The Government also contends that without Defendant Sablan's

12   cooperation and consent, the investigating agents would have required a search warrant to

13   obtain a blood sample.

14        The Government concedes that the investigating agents made a conscious decision to

15   not administer a breathalyzer test on Defendant Sablan. The Government avers the agents

16   made this decision for several reasons. First, the agents had no information that Defendant

17   Sablan might be intoxicated. Second, Defendant Sablan acted agitated while being held in

18   one of the visitation rooms. Third, use of force to obtain a breathalyzer sample likely would

19   be required and obtaining a sample would be difficult. Fourth, the use of force to subdue

20   Defendant Sablan for a breathalyzer test could be viewed as retaliation by correctional

21   officers. The Government also avers the agents did not consider obtaining a search warrant

22   or blood sample. The Government contends there is no evidence the prison officials acted

23   in bad faith in failing to collect a breathalyzer sample, and it does not oppose an evidentiary

24   hearing in which the investigating agents can testify. Finally, the Government responds that

25   Defendant Sablan can testify as to how much he drank and how intoxicated he felt. The

26   Government also contends that Defendant Sablan is not prejudiced by a lack of evidence of

27   his intoxication because the Bureau of Prisons incident report found Defendants obviously

28   intoxicated, and that this finding, combined with video evidence and witness testimony,

1    would qualify as comparable evidence.

2         Defendant Sablan replies that the widespread use of alcohol at USP Atwater on the

3    day of the attack was so conspicuous that responding officers and investigating agents had

4    notice of Defendant Sablan's intoxication.  Defendant Sablan further replies that

5    investigating agents did not collect bottles from inmates drinking in the unit or measure the

6    alcohol content of the substances inside.  Defendant Sablan also avers that investigators did

7    not preserve or test samples of Defendant Leon Guerrero's blood located on the floor and

8    on his clothing following the attack, and that the investigating agents made conscious

9    efforts to conceal the use of alcohol at USP Atwater.

10        Under the Due Process Clause, the government must "disclose to criminal

11   defendants favorable evidence that is material either to guilt or to punishment."  California

12   v. Trombetta, 467 U.S. 479, 480 (1984).  Additionally, "the Government could offend the

13   Due Process Clause of the Fifth Amendment if . . . it diminished a defendant's opportunity

14   to put on an effective defense."  Id. at 486; see also United States v. Valenzuela-Bernal, 458

15   U.S. 858, 873 (1982).  "[D]ue process requires law enforcement not just to preserve

16   evidence already in hand, but to gather and to collect evidence in those cases in which the

17   police themselves by their conduct indicate that the evidence could form a basis for

18   exonerating the defendant."  Id. (citing Arizona v. Youngblood, 488 U.S. 51 (1988))

19   (quotation omitted).  "Evidence is constitutionally material if it (1) 'possess[es] an

20   exculpatory value that was apparent before the evidence was destroyed'; and (2) is 'of such

21   a nature that the defendant would be unable to obtain comparable evidence by other

22   reasonably available means.'"  Miller v. Vasquez, 868 F.2d 1116, 1119 (9th Cir. 1989)

23   (quoting Trombetta, 467 U.S. at 489).  Furthermore, "a bad faith failure to collect

24   potentially exculpatory evidence would violate the due process clause."  Commonwealth of

25   N. Mariana Islands v. Bowie, 243 F.3d 1109, 1117 (9th Cir. 2001) (quotation omitted).

26        "The defense of intoxication, even if that intoxication was voluntary, [is] a valid

27   defense to the mens rea of specific intent."  United States v. Martinez-Martinez, 369 F.3d

28   1076, 1083 (9th Cir. 2004).  Where "an accused has offered evidence to raise the issue, his

1     capacity to form specific intent at the time of the offense becomes an element which, like

2     all other elements of the crime, must be proved by the government beyond a reasonable

3     doubt." <u>United States v. Echeverry</u>, 759 F.2d 1451, 1454 (9th Cir. 1985).  However, "proof

4     of intoxication, in and of itself, does not excuse commission of a specific intent crime." <u>Id.</u>

5     at 1455.

6         Here, Defendant Sablan is charged with three counts of first degree murder, each of

7     which require the mens rea of specific intent.  <u>See</u> 18 U.S.C. § 1111.  Therefore, evidence

8     of Defendant Sablan's voluntary intoxication potentially could be exculpatory to reduce the

9     degree of murder with which he is charged.  However, the following questions remain as to

10    whether this evidence is constitutionally material: (1) whether the exculpatory value of

11    Defendant Sablan's intoxication was apparent to the responding officers and investigators;

12    (2) whether the investigating agents acted in bad faith by deciding to not collect

13    alcohol-related evidence after the attack on Officer Rivera; and (3) whether Defendant

14    Sablan is unable to obtain comparable evidence by reasonably available means.

15        Defendant Sablan has not presented sufficient evidence that the responding officers

16    and investigators recognized the potentially exculpatory nature of Defendant Sablan's

17    intoxication in the immediate aftermath of the attack.  Defendant Sablan has presented

18    evidence that some guards and other inmates observed he was intoxicated, and that video

19    evidence reveals the same, but these observations do not demonstrate an awareness of the

20    exculpatory value of intoxication.  Defendant Sablan's evidence that the investigating

21    agents acted in bad faith by failing to collect evidence of alcohol consumption is also

22    inconclusive.  The Government provides several explanations for the decision to not obtain

23    a breathalyzer or blood-alcohol sample from Defendant Sablan.  The Court concludes that

24    the questions of whether the prison officials knew of the exculpatory nature of Defendant

25    Sablan's intoxication, as well as whether they acted in bad faith in not collecting evidence,

26    can best be resolved at trial in the context of a full evidentiary presentation.

27        Finally, as to whether Defendant Sablan has access to comparable evidence, the

28    Court concludes that the Bureau of Prison's finding that Defendant Sablan was obviously

1   intoxicated, as well video footage and the testimonial evidence of numerous witnesses to

2   the same, is comparable evidence to a blood-alcohol level for Defendant Sablan's argument

3   that he could not formulate the requisite mental state.  The lack of specific numbers as to

4   Defendant Sablan's blood-alcohol level or the potency of the contraband alcohol can be

5   addressed at trial through appropriate jury instruction.  See Echeverry, 759 F.2d at 1454-55

6   (affirming a jury instruction on intoxication that "makes it clear the burden of proving the

7   requisite intent rests with the government").  These issues may be explored more fully at

8   trial.  For the reasons stated above, the Court therefore denies Defendant Sablan's Motion

9   and denies his request for an evidentiary hearing.

10  **III.  CONCLUSION**

11          **IT IS THEREFORE ORDERED** that Defendant Joseph Cabrera Sablan's

12  Combined Motion to Dismiss Indictment (Doc. #722) is DENIED.

13          **IT IS FURTHER ORDERED** that, to the extent they have been incorporated by

14  Defendant Sablan, Defendant James Ninete Leon Guerrero's Motion to Dismiss Counts

15  One and Two of the Indictment (Doc. #689) and Motion for Order Precluding the Death

16  Penalty (Doc. #689) are DENIED.

17

18  Dated: July 10, 2014

19

20  _____

21  HONORABLE PHILIP M. PRO
    U.S. DISTRICT COURT JUDGE

22

23

24

25

26

27

28