UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA—FRESNO DIVISION

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JOSEPH CABRERA SABLAN,<br><br>　　　　　　　Defendant. | 1:08-CR-00259-PMP<br>**DEATH PENALTY CASE**<br><br>**ORDER** re Defendant Sablan's Motion to Transfer Venue |

　　　On August 18, 2008, an Indictment was returned charging Defendants Joseph Cabrera Sablan and James Ninete Leon Guerrero with three distinct counts of Murder, arising from the killing of Federal Correctional Officer Jose V. Rivera on June 20, 2008, at the United States Penitentiary in Atwater, California.  On May 14, 2013, the United States filed an Amended Notice of Intent to Seek the Death Penalty (Doc. #589).  Defendant Leon Guerrero pled guilty pursuant to a plea agreement allowing him to avoid the death penalty, and was sentenced to a term of life in prison.  (Doc. #844).  Defendant Sablan's trial is currently scheduled to commence April 6, 2015, in the Fresno Division of this Court.  If convicted, Sablan will face a separate penalty phase trial at which the trial jury will be called upon to decide whether Sablan should receive the death penalty.

　　　Before the Court for consideration is Defendant Joseph Cabrera Sablan's fully briefed, and extensively supported,  Motion to Transfer Venue (Doc. #891), filed pursuant to Federal Rule of Criminal Procedure 21, on October 29, 2014.  Sablan advances alternative bases for his

Motion. First, Sablan argues that due to a combination of factors creating great prejudice against him, he cannot receive a fair and impartial trial in the Eastern District of California, thus warranting transfer in accord with Rule 21(a). Second, Sablan argues that at a minimum, the jury selection procedures necessary to eliminate bias against him, will be so burdensome that the Court should transfer venue to another district "for the convenience of the parties, any victim, and the witnesses, and in the interests of justice." Fed. R. Crim P. 21(b).

Specifically, Sablan argues he cannot receive a fair and impartial trial in the Eastern District of California due to the unusually high concentration of correctional facilities within the District, which play a major role in the economy and culture of the communities comprising the Fresno Division. Sablan also relies on the asserted prejudice resulting from a correspondingly high number of prison-related lawsuits filed by inmates or correctional facility employees, whose defendants are members of the Fresno Division communities, and hence, potential members of the jury pool. Next, Sablan cites a recent survey of 386 jury-eligible residents in the Eastern District conducted by Dr. Bryan Edelman. The survey shows that the well-publicized history of cases involving correctional officers accused of wrongdoing, shows the potential jury pool within the Fresno Division strongly identifies with, and is protective of, correctional officers, and concomitantly views inmate litigants as a group without rights or legitimate interests. Sablan argues that this combination of factors is likely to result in a pool of jurors unable to give fair and impartial consideration to his defense, particularly to the extent his defense relies on his claim that USP Atwater was mismanaged. Sablan asserts that the penalty phase jury would be unduly swayed by personal identification with the government's victim-impact witnesses, and also will be less open to considering Sablan's personal mitigation evidence.

Plaintiff United States responds that while the Court has broad discretion in evaluating requests to change venue, United States v. Sherwood, 98 F.3d 402 (9th Cir. 1996), Defendant Sablan has failed to show either "presumed prejudice" in the form of extraordinary local prejudice which will prevent a fair trial, United States v. Skilling, 561 U.S. 358 (2010), or by "actual prejudice" during *voir dire* that potential jurors hold the claimed prejudice which they

1  could not set aside, <u>Murray v. Schriro</u>, 746 F.3d 418 (9th Cir. 2014).  The Government argues
2  that each of the concerns Sablan raises can adequately be addressed by effective *voir dire*, and
3  thus should not form the basis for a preemptive change of venue.
4        Evaluating the salient factors presented by the parties in accord with applicable legal
5  standards persuades this Court that Defendant Sablan's Motion to Transfer Venue has merit and
6  should be granted.
7        As documented in Sablan's Motion, there has been significant media coverage
8  throughout the Fresno Division area from which the jury in this case would be drawn.  While the
9  actual impact of such publicity cannot be definitively quantified without engaging in an actual
10 attempt at selecting a jury drawn from the Fresno Division, the potential for influence creating
11 bias is apparent as reflected in Dr. Edelman's survey.  The Court also finds it reasonable to
12 presume that some potential jurors will be influenced by the fact that a major highway running
13 through the middle of the Fresno Division has been named the "Correctional Officer Jose V.
14 Rivera Memorial Highway" in honor of the victim in this case.  Moreover, as set forth in
15 Sablan's Motion, "it also is undisputed that the Eastern District of California contains the
16 Nation's highest concentration of prisons, detention facilities, and the private and public
17 administrative offices that support them."
18       Assessing the impact of pretrial publicity, or other factors, on prospective jurors in
19 advance of *voir dire* is, of course, always difficult.  The utility of a case like <u>Skilling</u> is grounded
20 in the hindsight through which the courts could evaluate the entire *voir dire* process against a
21 variety of pertinent factors.  However, as noted in Sablan's Reply Memorandum (Doc. #942), the
22 Enron Corporation which was at the heart of the <u>Skilling</u> case employed approximately 6,000
23 people in Houston, Texas compared to the approximately 35,600 individuals employed in
24 California's Corrections and Detention Systems, at least 18,600 of which are located in the
25 Eastern District of California.  Still, unlike <u>Skilling</u>, some degree of speculation is involved in
26 adjudicating Sablan's Motion.  Nevertheless, courts also generally do not have the benefit of
27 pretrial survey research to inform the question.  Here we do.
28       Dr. Edelman's survey is un-controverted by the Government, and it suggests that 60

3

1 percent of the venire has a source of bias against Defendant Sablan, which would require
2 particularly onerous *voir dire* procedures to identify.  There is little assurance that even the most
3 rigorous procedures would mitigate the apparently legitimate specter of bias or prejudice to the
4 process of a fair trial.  Additionally, tasking the Court and counsel for the parties with weighing
5 the degree of bias held by particular jurors, while undoubtedly a constant responsibility
6 regardless of where the case is tried, is apparently significant if the case is tried in the Fresno
7 Division, and considerably less so if venue is transferred.  Indeed, Dr. Edelman's survey shows
8 actual bias in more than half the potential jury pool.  The presumptive cost, inconvenience and
9 delay in securing a fair jury in this case is a strong factor weighing in favor of a change of venue.
10 So too is the protracted jury selection screening and selection process which would be required
11 to select a fair and impartial jury drawn from communities within the Fresno Division, compared
12 to other proximate and available venues.

13       The Court also is mindful that the convenience of witnesses, counsel, and the family of
14 Jose Rivera, are legitimate factors to be considered in evaluating Sablan's Motion.  Although the
15 record does not fully document the residence of every witness or family member affected, the
16 Court presumes that communities within the Fresno Division are the place of  residence of the
17 majority of Mr. Rivera's family members, as well as percipient witnesses who will be called
18 during that portion of the trial at which a determination will be made as to whether Sablan is  not
19 guilty or guilty of the Murder charged.  If Sablan is convicted of a death eligible Murder count,
20 the equally long trial to determine whether he should be subjected to the death penalty will
21 involve many witness who do not reside in California, and surely not in the Eastern District.
22 Furthermore, a less protracted jury selection process will reduce the overall time of the trial,
23 thereby relieving in part the burden resulting from attendance at trial by members of Mr.
24 Rivera's family.  The Court concludes that on balance, a transfer of venue can be accomplished
25 which will reasonably accommodate the convenience of all affected.

26       The State of California is geographically and demographically enormous.  As a result,
27 California is divided into four federal districts.  The contiguous Central and Northern Districts of
28 California afford viable options for the trial of this case which are free of the factors warranting a

transfer of venue, and the principal places of holding court in each are approximately equidistant from the City of Fresno. Additionally, as the undersigned is retiring from the bench effective January 16, 2015, this case will of necessity be reassigned to a new judge from outside the Eastern District of California. The Central District of California, based in Los Angeles, has the greatest number of judges available for assignment of this case of any district in the United States. The jury pool in the Central District of California is vast, and the prospect of the impact of pretrial publicity or other factors currently supporting the change of venue, are slight. This Court therefore concludes that venue for trial of this case should be transferred to the United States District Court for the Central District of California.

   IT IS THEREFORE ORDERED that Defendant Sablan's Motion to Transfer Venue (Doc. # 891) is GRANTED, and that venue is hereby transferred to the United States District Court for the Central District of California.

DATED: December 19, 2014.

_____
HONORABLE PHILIP M. PRO
U.S. DISTRICT COURT JUDGE